NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1337
_____

KEITH COLLIER,
                                        Appellant

v.

WARDEN R. MARTINEZ, (USP Allenwood) D. SCOTT DODRILL, (Regional
Director); CORRECTIONAL OFFICER ADAMS; CAPTAIN BLUDWORTH; KNOWN
AND UNKNOWN DIRECTLY or INDIRECTLY RESPONSIBLE B.O.P. Employees
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-09-cv-02232)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 2, 2012

Before:  SCIRICA, GREENAWAY, JR. and VAN ANTWERPEN, Circuit Judges

(Opinion filed: April 4, 2012 )
_____

OPINION
_____

PER CURIAM

        Keith Collier, a federal prisoner currently incarcerated at USP Pollock, appeals

District Court orders that dismissed some of his constitutional claims and granted

summary judgment in favor of the defendants on one other.  For the following reasons,

we will affirm in part, vacate in part, and remand for further proceedings.

On June 26, 2008, Collier (who was then housed at USP Allenwood) was placed in the Special Housing Unit (SHU) pursuant to a gambling investigation. A search of his original cell led to a discovery of alleged intoxicants, for which he was written up. Angered by perceived inconsistencies in the disciplinary investigation, Collier began a hunger strike on July 4, 2008.

According to Collier, on July 8 he was "threatened and ridiculed" by defendant Captain Bludworth, who told Collier that he would cut off his water and "make life difficult" if Collier kept up the hunger strike. The next day, Officer Adams cut off all running water to Collier's cell. Collier asked Adams for an explanation, and was told to "use and drink the toilet water," or "do what crack heads do." Collier Aff. ¶¶ 12–13, ECF No. 2. Collier was without running water until July 12, by which point he was dehydrated. Collier ended his hunger strike a few days later, on July 17.

Collier commenced this Bivens[1] suit on November 2, 2009, complaining of constitutional injuries stemming from 1) the policy violations engaged in by the Bureau of Prisons, and 2) the "ordeal" of his water being disabled. Collier maintained that he suffered from nightmares and health problems related to the deprivation, and also challenged a purported loss of good-time credits associated with his incarceration in the SHU.

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

The presiding Magistrate Judge recommended dismissing the majority of Collier's amended complaint for failure to state a claim upon which relief could be granted. However, he also recommended allowing Collier's Eighth Amendment claim regarding water deprivation to proceed. The District Court adopted this recommendation, dismissing all claims "**except** for the Eighth Amendment claims against Defendants Bludworth and Adams based on cutting off Plaintiff's water in his cell." Order, ECF No. 15 (emphasis in original).

Bludworth and Adams, the remaining defendants, then moved for summary judgment. Unsurprisingly, they contested most of Collier's factual averments; for example, while apparently conceding that the water may have been briefly switched off in Collier's cell, they emphasized that the problem had been swiftly resolved after authorities were alerted. The defendants also cited a lengthy list of prison policies regarding actions taken during hunger strikes. See, e.g., Statement of Material Facts ¶¶ 20–24, ECF No. 30.

The Magistrate Judge concluded that the defendants had not met their burden for summary judgment; specifically, the facts alleged by the defendants sharply contradicted the facts presented by the plaintiff, and neither set cleanly vaulted past the other:

> From the documentation presented by the plaintiff a reasonable finder of fact could find that: defendant Bludworth threatened to turn the plaintiff's water off and to make his incarceration difficult as retaliation for the plaintiff's hunger strike, defendant Adams personally turned the plaintiff's water off, the plaintiff's water was shut off from July 9, 2008 until July 12, 2008, and the plaintiff required intravenous hydration as a result. The records provided serve as evidence that the plaintiff complained about

3

having his water shut off. Collier v. Bludworth, No. 1:09-CV-02232, 2010 WL 5479643, at *4 (M.D. Pa. Nov. 9, 2010) (Report and Recommendation). "The plaintiff provides evidence that the defendants were personally involved in the shutting off of his cell's water supply. The defendants provide evidence to the contrary. Based on the conflicting evidence provided by the parties, genuine issues of material fact concerning what happened exist in the instant case." Id. at *5.

The defendants objected, arguing that cutting off water to a cell was not sufficient to violate the Eighth Amendment. The District Court agreed; emphasizing the inconsistencies and holes in Collier's story, it granted summary judgment in favor of the defendants. Specifically, it interpreted Collier's answer to the defendants' Statement of Material Facts as "admitting" issues fatal to his claim. Under the District Court's reading, it was "not disputed that Collier had liquids available to him" during the time in question, and "[i]n light of Plaintiff's acknowledgment that fluids were provided with meals[], that he never complained to medical staff that he had no drinking water[,] and that he was constantly advised of the need for hydration, it appears that Plaintiff's lack of hydration was self-imposed." Collier v. Bludworth, No. 1:09-CV-2232, 2011 WL 9116, at *2–3 (M.D. Pa. Jan. 3, 2011). This appeal followed.

We have jurisdiction under 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826

4

(3d Cir. 2011). With regard to the dismissed claims, we are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in Collier's favor, see Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam); all the same, a pro se complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As before, inferences are to be drawn in Collier's favor. Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011). "[A]t the summary judgment stage, the court is not entitled to weigh the evidence; . . . [r]ather, the court must limit its inquiry to whether a genuine issue of fact exists," Berrier v. Simplicity Mfg., 563 F.3d 38, 64 n.39 (3d Cir. 2009); but if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

We review only matters raised in Collier's opening brief, deeming claims not argued to be waived. See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994). As a pro-se litigant, Collier is entitled to liberal construction of his pleadings. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).

We agree with the District Court that Collier's due-process claims fail. Collier's stint in the SHU—which was brief and, water-shutoff notwithstanding, not particularly punitive—did not impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (applying Sandin to a federal Bivens claim); Ware v. Morrison, 276 F.3d 385, 388 (8th Cir. 2002) (same). Collier also briefly mentions good-time credits in his amended complaint. To the extent that he complains of "past" good-time credits that were lost due to the disciplinary action, he must proceed under 28 U.S.C. § 2241. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985); Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam). To the extent that he complains of the negation of future good-time credits, we agree with the defendants that he has not stated a violation of the protections outlined by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 564–67 (1974).

Collier's water-deprivation claim poses more of a problem to summary resolution. First, Collier's story and the defendants' story paint starkly different pictures of the relevant events. To be sure, the defense's evidentiary proffer dwarfs Collier's small collection of documents and affidavits, but "[o]n summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995).

Complicating matters further, the District Court appeared to erroneously resolve certain contested matters in favor of the defendants—fact-finding that is "impermissible

6

at the summary judgment stage." Yeager's Fuel v. Pa. Power & Light Co., 22 F.3d 1260, 1268 (3d Cir. 1994). For instance, the District Court included on its list of "facts to which Plaintiff admits are true" the following (the numbers refer to the corresponding paragraphs in the defendants' statement of material facts):

> No. 22. Even when an inmate goes on a hunger strike, the inmate is still provided three meals a day in an effort to have the inmate resume eating.
> No. 23. The breakfast meal contains milk and the lunch and dinner meals each contain a beverage pack.[2]
> No. 53. Collier was offered meals but refused to eat.
> . . .
> No. 86. Collier was thoroughly educated on the harmful effects of not eating and/or drinking and, to which he verbalized understanding.

Collier, 2011 WL 9116, at *2. Yet a close reading of Collier's "admissions" reveals that he admits only the existence of *policies* cited by the defendants in those paragraphs.[3] Furthermore, the meal-refusal cited in number 53 refers (footnote to the contrary notwithstanding) to the day before the water stoppage, and the "thorough education" referred to in 86 came two days after the water was turned back on.

On appeal, the defendants argue that, even if all of Collier's factual contentions are taken as true, his water claim fails as a matter of law, because lack of running water, without more, does not suffice to show an Eighth Amendment violation. They cite a

---

[2] The parties appear to agree that "beverage pack" is a euphemism for a dry mix that requires water. See Br. of Appellees 17 n.4; Pro Se Appeal Br. 6.

[3] The defendants continue to insist that it is "uncontroverted" that Collier had liquids available to him as part of his daily allotment of three meals. Br. of Appellees 25. While we disagree that the matter is uncontroverted factually, the defendants do raise an issue that goes to the crux of the case, and that we discuss further *infra* in note 5.

number of non-binding cases that do appear to support this interpretation of the current state of the law.[4] But we cannot say, as a matter of law and on the present record, that a complete or near-complete lack of access to fluids for three days cannot count as the "without more" that would suffice to show a water-deprivation Eighth Amendment violation. See Young v. Quinlan, 960 F.2d 351, 364–65 (3d Cir. 1992), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000).[5]

In sum, because of the unclear factual record and the erroneous factfinding in

---

[4] See, e.g., Gilblom v. Gillipsie, No. 08-1672, 2010 WL 1813494, at *6 (W.D. Pa. Apr. 6, 2010) (Report and Recommendation); Castro v. Chesney, No. 97–4983, 1998 WL 767467, at *9 (E.D. Pa. Nov. 3, 1998) ("The mere fact that the water in Plaintiff's cell was turned off for a period of days, without more, even if proved by Plaintiff is not sufficient to rise to the level of a constitutional violation.")

[5] We infer that Collier's claim, at its core, is one about being deprived access to fluids and not, strictly speaking, one about the dry conditions in his cell. If he were to have had access to adequate hydration during the period in question, even in conjunction with meals he otherwise did not desire to eat, his claim would necessarily fail, as he would not be able to show that the complained-of deprivation was "sufficiently serious" (and might also be unable to demonstrate that the defendants possessed the requisite "deliberate indifference"). See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The record does not clearly resolve this matter. Collier claims that his water was disabled by the defendants, that they refused his entreaties to restore service, and that he became dangerously dehydrated. The defendants counter by insisting that prison policy mandated fluids with meals. Again, we can infer from Collier's pleadings that he was not provided any alternative source of drinking water (whether with meals or at other times, or that he asked for water and was refused).

For the first time in his reply brief, Collier admits that he was provided with eight ounces of milk per day during the period in question, but argues that such a small amount of liquid would not have been enough to sustain him during the shut-off period. We believe that the District Court is best positioned to resolve this matter in the first instance.

favor of the defendants, we will vacate the District Court's summary-judgment order and remand for further proceedings. We will affirm as to all other claims. Among other measures on remand, the District Court may wish to consider ordering further discovery, so as to harmonize the factual record and to better consider the defendants' claim of qualified immunity. See Nelson v. Jashurek, 109 F.3d 142, 147 (3d Cir. 1997) ("After a careful review of the matter we have concluded that we should not consider the qualified immunity defense in the first instance, particularly as genuine disputes of material facts may exist with respect to it."). Collier's motion to file his reply brief out of time is granted; his motion for "limited remand" is denied.