[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-12932

————————————————

D.C. Docket No. 1:12-cv-00640-CG-N

BRENT JACOBY,

Plaintiff-Appellant,

versus

BALDWIN COUNTY,
SHERIFF MACK,
MAJOR BYRNE,
CAPT. BENNETT,
SGT. MEANS, et al.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama

————————————————

(August 29, 2016)

Before MARTIN and JORDAN, Circuit Judges, and VINSON,[*] District Judge.

MARTIN, Circuit Judge:

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

Brent Jacoby appeals the District Court's grant of summary judgment to Sheriff Huey Mack in this 42 U.S.C. § 1983 suit.  Mr. Jacoby was a pretrial detainee at the Baldwin County Corrections Center ("Baldwin jail") in Bay Minette, Alabama.  On August 12, 2012, Mr. Jacoby was placed in administrative segregation after testing positive for cocaine.  He alleges that he was forced sleep on the floor next to a toilet while in administrative segregation and was exposed to human excrement as a result.  Mr. Jacoby also alleges that the August 15, 2012, disciplinary hearing that stemmed from his failed drug test was procedurally inadequate.  First, Mr. Jacoby complains that he was prevented from calling a key witness—Sergeant Griffith—who would have testified in his defense.  Second, Mr. Jacoby argues that one of the disciplinary hearing board members, Officer Arnold, should not have been permitted to hear the case because he was involved in the underlying investigation that led to Mr. Jacoby's arrest.

On appeal, Mr. Jacoby challenges the District Court's ruling on two claims, citing violations of the Due Process Clause of the Fourteenth Amendment for both.[1]  Mr. Jacoby first argues that Sheriff Mack violated his substantive due

---

[1] The two claims Mr. Jacoby appeals were against Baldwin County, Alabama, Sheriff Huey Mack, and former Assistant Chief Deputy of Corrections Dale Byrne in the District Court. Mr. Jacoby has not appealed the denial of his motion to substitute Major Jimmy Milton, who replaced Major Byrne after his death, as to his individual claims.  Similarly, he has not appealed the dismissal of his claims against Baldwin County or his official-capacity claims against the individual defendants.  Therefore, Mr. Jacoby's only claims remaining on appeal are against Sheriff Mack in his individual capacity for money damages and in his official capacity for injunctive relief.  However, since Mr. Jacoby is no longer an inmate at the Baldwin jail, his

2

process rights by confining him in an unsanitary and overcrowded cell.  Mr. Jacoby also argues that Sheriff Mack violated his procedural due process rights at his August 15, 2012, disciplinary hearing.  We affirm the District Court as to both claims.

## I.

We review de novo a district court's decision on a motion for summary judgment, viewing the facts in the light most favorable to the plaintiff.  Terrell v. Smith, 668 F.3d 1244, 1249–50 (11th Cir. 2012).  Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quotation omitted); see also Fed. R. Civ. P. 56(a).  "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(l).  Summary judgment is thus warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.

Mr. Jacoby alleges that on August 12, 2012, he was placed in

---

claims for injunctive relief are moot.

administrative segregation in the Baldwin jail's "F-Block" after a urine test administered by the jail came back positive for cocaine. According to Mr. Jacoby, he had to sleep on the floor next to a toilet while in administrative segregation because he was the third inmate in an 8-by-l0-foot cell meant for two. He also alleges that his cellmates "urinat[ed] and defecat[ed] over him" as he tried to sleep, and that other inmates in the segregation unit "thr[ew] feces and urine at him." Mr. Jacoby alleges that he developed a foot rash due to these unsanitary conditions and the lack of hygiene products available to him.[2]

On August 15, 2012, Mr. Jacoby had a disciplinary hearing about his failed drug test. Mr. Jacoby raises the issue of the propriety of one of the three officers (Officer Arnold) serving on the hearing board after having been present for the incident that resulted in Mr. Jacoby being disciplined. Mr. Jacoby also says that he wanted to call Sergeant Griffith as a witness to explain that Mr. Jacoby was

---

[2] As we must on summary judgment, we view the facts in the light most favorable to Mr. Jacoby. Terrell, 668 F.3d at 1250. However, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(l). Mr. Jacoby has not pointed to any evidence, such as his own affidavit or affidavits from his cellmates, supporting his claim that other inmates threw human waste at him. Without record support, we view Mr. Jacoby's assertion as a conclusory allegation insufficient to create a genuine issue of material fact.

Mr. Jacoby likewise fails to create a triable issue of fact on the question of whether he was deprived of hygiene products. Sheriff Mack submitted affidavit testimony by Major Milton saying that inmates in the segregation unit are given thirty minutes of recreation time each day during which they can shower. Major Milton's affidavit also says that inmates are permitted to order "certain hygiene items" and are provided with "basic sanitary materials." Again, Mr. Jacoby fails to "cit[e] to particular parts of materials in the record" that would support his contrary assertion that he was not allowed hygiene products. Id.

4

working on drug busts with him, and that Mr. Jacoby was only using drugs as a cover.  However, the hearing board refused to let him call Sergeant Griffith.  Mr. Jacoby was found guilty of cocaine use and given 45 days of segregation.  The next day, Mr. Jacoby was given 24 additional days of segregation after being found guilty in a separate disciplinary hearing of possessing a small piece of copper wire that could be used as a weapon.

### III.

To proceed with his constitutional claims, Mr. Jacoby must clear the significant hurdle posed by Sheriff Mack's qualified immunity defense.  "Qualified immunity protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996).  "In this [C]ircuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).  If a public official was acting within the scope of his discretionary authority, the burden falls to the plaintiff to show that qualified immunity is inappropriate.  Terrell, 668 F.3d at 1250.  To do so, the plaintiff must: (1) "allege facts that establish that the officer violated [his] constitutional rights";

5

and (2) "show that the right involved was clearly established at the time of the putative misconduct." Id. (quotation omitted). We may consider these two prongs in either order, and a public official is entitled to qualified immunity if the plaintiff fails to establish either one. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

Mr. Jacoby does not contest that Sheriff Mack was acting within his discretionary authority at all times relevant to this lawsuit. Instead, he claims that it was clearly established that both his conditions of confinement and the process provided at his August 15 disciplinary hearing were constitutionally inadequate. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (quotation omitted). The specific action in question need not have been previously found unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." Id. (quotation omitted). The central question is whether the state of the law at the time of the violation gave the officials "fair warning" that their alleged actions were unconstitutional. Id. at 741, 122 S. Ct. at 2516.

## IV.

We first consider whether it was clearly established that Mr. Jacoby's conditions of confinement violated his constitutional rights. Again, Mr. Jacoby

alleges that he was forced to sleep "on the floor with no mattress and sheets" while "next to a toilet" during his first night in segregation.  Mr. Jacoby continued to sleep on the floor next to the toilet even after the first night, saying it was his only option because he was the third occupant in a two-man cell.  He alleges that he was exposed to human excrement and developed a foot rash as a result of these conditions.

While the conditions under which a convicted inmate are held are scrutinized under the Eighth Amendment's prohibition on cruel and unusual punishment, the conditions under which a pretrial detainee are held are reviewed under the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979) (using the Fifth Amendment Due Process Clause).  The Supreme Court established the standard for substantive due process claims raised by pretrial detainees in Bell.  Bell teaches that "a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Id. at 535, 99 S. Ct. at 1872; see also McMillian v. Johnson, 88 F.3d 1554, 1564 (11th Cir.), amended on other grounds on reh'g by 101 F.3d 1363 (11th Cir. 1996).  However, the government "may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."  Bell, 441

U.S. at 536–37, 99 S. Ct. at 1873.

"[W]hether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004) (citing Bell, 441 U.S. at 538, 99 S. Ct. at 1873). "[A]n expressed intent to punish on the part of detention facility officials" is sufficient, but not necessary, to establish unconstitutional pretrial punishment. Bell, 441 U.S. at 538, 99 S. Ct. at 1873–74; see also McMillian, 88 F.3d at 1564. "[A] court [also] permissibly may infer that the purpose of the governmental action is punishment" if the "restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." Bell, 441 U.S. at 539, 99 S. Ct. at 1874.

Bell effectively creates a two-part test. First, a court must ask whether any "legitimate goal" was served by the prison conditions. Second, it must ask whether the conditions are "reasonably related" to that goal. And, to defeat Sheriff Mack's claim of qualified immunity, Mr. Jacoby must point to precedent that would give Sheriff Mack "fair warning" that these requirements would not be met under the conditions of confinement Mr. Jacoby says he experienced.[3] See Hope, 536 U.S.

---

[3] In Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985), this Court held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that

at 741, 122 S. Ct. at 2516.  We hold that Mr. Jacoby has failed to make this

showing.  He has pointed to no caselaw clearly establishing that putting him in a

cell with two other inmates was unconstitutional punishment in violation of Bell.

To the contrary, in Bell itself the Supreme Court held that "double-bunking"

(placing two inmates in a cell intended for one) does not constitute punishment.

441 U.S. at 541–42, 99 S. Ct. at 1875–76.  Neither has Mr. Jacoby pointed to any

caselaw clearly establishing that having to sleep on a mattress on the floor violated

his constitutional rights.  In fact, in Hamm, this Court held that "[t]he fact that [a

pretrial detainee] temporarily had to sleep upon a mattress on the floor or on a table

is not necessarily a constitutional violation."  774 F.2d at 1575.

Mr. Jacoby cites Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991), Jordan

v. Doe, 38 F.3d 1559 (11th Cir. 1994), and Brooks v. Warden, 800 F.3d 1295 (11th

Cir. 2015), as caselaw clearly establishing the constitutional violations he alleges.

In Chandler, this Court ruled that a convicted inmate who alleged he was

"confine[d] in a cold cell with no clothes except undershorts and with a plastic-

---

allowed by the eighth amendment for convicted persons."  Id. at 1574.  Relying on Hamm, the
Magistrate Judge's Report and Recommendation (which the District Court adopted) applied the
Eighth Amendment's subjective deliberate indifference standard to Mr. Jacoby's due process
claim.  That is, the District Court found that Mr. Jacoby had not established: (1) an "objective[],
sufficiently serious" risk of harm, and (2) "deliberate indifference" to that risk by prison
officials.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (quotations
omitted).  We conclude that the outcome in this case is the same under either Hamm or Bell, and
so apply the Supreme Court's articulation of the standard for pretrial detainees from Bell on
appeal.  However, we need not decide Mr. Jacoby's claim that the Eighth Amendment's
subjective deliberate indifference standard conflicts with Bell's objective "punishment" standard.

9

covered mattress without bedding; filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus" established a triable issue of fact.  926 F.2d at 1063, 1065.  Likewise, in Jordan we held that a pretrial detainee's allegations that he was held in "overcrowded, unsanitary local jails where the food was contaminated and fire hazards existed" were sufficient for his claims to survive a motion to dismiss (though we ultimately held that the government officials in that case should have been granted qualified immunity).  38 F.3d at 1565, 1567.  And finally, in Brooks we reversed the dismissal of a convicted inmate's claims that he "was forced to defecate into his jumpsuit and sit in his own feces for two days during his three-day hospital stay."  800 F.3d at 1303.

Taken in the light most favorable to him, Mr. Jacoby's allegations establish that he was temporarily forced to sleep on a mattress on the floor near the toilet.[4] His circumstances are not enough like those described in Chandler, Brooks, and Jordan for those cases to clearly establish that his conditions of confinement were unconstitutional.  We therefore affirm the District Court's ruling on Mr. Jacoby's

---

[4] In his complaint, Mr. Jacoby also alleged that he was confined for 23.5 hours per day in an overcrowded cell.  Sheriff Mack confirms that "[i]nmates are generally allowed thirty (30) minutes time recreation in segregation."  The number of hours Mr. Jacoby was confined each day gives us pause.  However, Mr. Jacoby has not argued on appeal that this condition of his confinement violated his substantive due process rights, so he has abandoned this argument.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).

10

substantive due process claim.

## V.

We next consider whether Sheriff Mack violated Mr. Jacoby's clearly established procedural due process rights during the August 15, 2012, disciplinary hearing.  Mr. Jacoby argues that his disciplinary hearing was constitutionally inadequate because: (1) he was not permitted to call Sergeant Griffith as a witness; and (2) Officer Arnold, who brought him to his drug test and then to the F-Block afterwards, was one of the three presiding officers.

## A.

The Fourteenth Amendment due process safeguards that must be afforded to both pretrial detainees and convicted inmates in prison disciplinary hearings are governed by Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974).  See Bell, 441 U.S. at 545, 99 S. Ct. at 1877.  But for an inmate to be entitled to those safeguards, he must have an interest "sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to th[e] minimum procedures appropriate under the circumstances and required by the Due Process Clause."  Wolff, 418 U.S. at 557, 94 S. Ct. at 2975; see also Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) ("[W]e must determine whether the injury claimed by the plaintiff[] is within the scope of the Due Process Clause[, which] protects against deprivations of 'life, liberty, or property without due process of law.'" (quoting U.S. Const.

11

Amend. XIV)).

Whether an inmate has a protected liberty interest that would entitle him to due process protections "is often a difficult determination in the context of a prison, because prisoners have already been deprived of their liberty in the ordinary sense of the term." Bass, 170 F.3d at 1318. In Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293 (1995), the Supreme Court gave us the test for determining whether a convicted inmate has a protected liberty interest. This test examines the hardship imposed on the inmate relative to the "basic conditions" of prison life. See id. at 485, 115 S. Ct. at 2301. Under this test, a convicted inmate is entitled to procedural due process in two circumstances. First, he is entitled to a measure of procedural due process when an increased restraint "exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Id. at 484, 115 S. Ct. at 2300. Second, he is entitled to a measure of procedural due process when a change in his conditions of confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

In Sandin, the Supreme Court held that placing a convicted inmate in segregated confinement for thirty days as discipline was not "a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence" of thirty years to life in prison. Id. at 485, 115 S. Ct. at 2301. Therefore, that inmate was not

12

entitled "to the procedural protections set forth in Wolff" before being placed in segregation. Id. at 487, 115 S. Ct. at 2302. Citing Sandin, the District Court here ruled against Mr. Jacoby on his procedural due process claim because his confinement in disciplinary segregation "simply do[es] not give rise to a constitutionally protected liberty interest . . . so as to invoke [] due process procedures."

Before considering the District Court's application of Sandin to Mr. Jacoby's case, it is important to understand the reasoning that supported its holding. The Supreme Court explained that a convicted inmate's disciplinary segregation did not give rise to a protected liberty interest because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485, 115 S. Ct. at 2301 (emphasis added). The Court also said the disciplinary segregation at issue in Sandin was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." Id. at 487, 115 S. Ct. at 2302.

Sandin therefore held that disciplinary segregation did not "exceed[] the [inmate's] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause" or "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" because he was already

13

subject to restraint on account of his conviction and sentence.  Id. at 484, 115 S. Ct. at 2300.  Said another way, convicted inmates have no right to a due process hearing before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life.  This is because these inmates are already subject to punishment on account of their convictions and sentences.

This rationale plainly does not apply to a pretrial detainee like Mr. Jacoby. At the time he was detained at the Baldwin jail, Mr. Jacoby "ha[d] been charged with a crime [ ] but ha[d] not yet been tried on the charge."  Bell, 441 U.S. at 523, 99 S. Ct. at 1865.  It necessarily follows that he had not been convicted or sentenced.  Therefore, as the Supreme Court recognized in Bell, "under the Due Process Clause, [he could] not be punished prior to an adjudication of guilt in accordance with due process of law."  Id. at 535, 99 S. Ct. at 1872.  Sandin recognized this distinction between convicted inmates, who can be punished without a due process hearing, and pretrial detainees, who cannot.  As Sandin said:

> The Court in Bell correctly noted that a detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law."  The Court expressed concern that a State would attempt to punish a detainee for the crime for which he was indicted via preconviction holding conditions.  Such a course would improperly extend the legitimate reasons for which such persons are detained—to ensure their presence at trial.

14

Id. at 484, 115 S. Ct. at 2300 (citations omitted) (quoting Bell, 441 U.S. at 535, 99 S. Ct. at 1872).

Sandin leaves intact Bell's holding that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, 441 U.S. at 535, 99 S. Ct. at 1872. It's true that Mr. Jacoby's procedural due process claim is different than the substantive due process claims brought in Bell. He challenges his being placed in segregation after what he views as an inadequate hearing. He does not challenge the general conditions of his incarceration with this claim. And the jail imposed disciplinary segregation not as punishment for the crime that led to Mr. Jacoby's detention, but rather as punishment for his violation of jail rules. Still, Bell's teachings apply here with equal force. A pretrial detainee like Mr. Jacoby may not be punished for his misconduct while in prison unless he is given a due process hearing. See id.

A pretrial detainee need not meet the Sandin standard to establish his right to a due process hearing before being placed in disciplinary segregation. Specifically, a pretrial detainee is not required to prove that his conditions of confinement either "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" or "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, 115 S. Ct. at 2300, to be entitled to the process governed by

15

Wolff.  Rather, a pretrial detainee is entitled to a due process hearing before being subjected to "conditions [that] amount to punishment."  Bell, 441 U.S. at 535, 99 S. Ct. at 1872.[5]

Of course this does not mean that Mr. Jacoby and his fellow pretrial detainees are free to violate jail rules with impunity.  Indeed, Bell recognizes the need for "preserving internal order and discipline" among pretrial detainees and convicted inmates alike.  Id. at 546, 99 S. Ct. at 1878.  What it does mean, however, is that before Mr. Jacoby, as a pretrial detainee, is punished for violating a jail rule, there must be a due process hearing to determine what rule he violated.  This approach is consistent with both Bell and Sandin.

We recognize that, in Magluta, a panel of this Court applied the Sandin test to a pretrial detainee's procedural due process claim.  See 375 F.3d at 1282.  However, Magluta does not categorically require the application of Sandin to pretrial detainees' procedural due process claims for a couple of reasons.  First, Magluta's analysis rested primarily on pre-Sandin caselaw because the detention at issue in that case ended two months before the Supreme Court decided Sandin.  Therefore, Magluta first analyzed the plaintiff's procedural due process claim under the "mandatory language" analysis used by the Supreme Court in Hewitt v.

---

[5] As with a substantive due process claim, "whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose."  Magluta, 375 F.3d at 1273 (citing Bell, 441 U.S. at 538, 99 S. Ct. at 1873).

16

Helms, 459 U.S. 460, 103 S. Ct. 864 (1983).  See Magluta, 375 F.3d at 1280.

Under the (now discarded) Hewitt test, an inmate had a protected liberty interest if

the prison regulation under which he was punished included "mandatory" language

compelling certain procedures.  See 459 U.S. at 472, 103 S. Ct. at 871.  Applying

this test, the Magluta panel held that the regulation at issue contained "substantive

predicates and extensive use of mandatory language . . . [that] create[d] a liberty

interest in remaining in the general prison population."  375 F.3d at 1281.  And

Magluta looked to Hewitt to determine whether the liberty interest was clearly

established for the purposes of the defendants' qualified-immunity claim.  See id.

at 1283–84.

It was only after conducting an extensive analysis under Hewitt that the

Magluta panel turned briefly to Sandin.  See id. at 1281–82 & n.8 (acknowledging

that "after the challenged conduct took place, the Supreme Court expressly

abandoned Hewitt's methodology" in Sandin).  And even then, the Court

referenced Sandin only to say that "Sandin does not operate to erode the existence

of a liberty interest which was indicated by the state of the law as of the time of the

conduct at issue."  Id. at 1282.  In other words, the panel found that Sandin did not

call for a different conclusion than Hewitt because in Magluta the pretrial detainee

alleged that he had been locked in a closet-sized space with minimal human

contact for 500 days, so he also met the stricter "atypical hardship" standard.  Id.

17

Magluta's conclusion that the plaintiff met both standards does not mandate the application of Sandin to all claims by pretrial detainees. The Magluta panel was merely confirming that Sandin did not upset its Hewitt-based holding, which applied based on the law existing at the time of Mr. Magluta's detainment.

Second, the Magluta panel's application of Sandin does not control here because that panel never actually considered whether Sandin governs claims by pretrial detainees. Instead, Magluta summarily discussed Sandin after it had already concluded that the pretrial detainee in question had a protected liberty interest under Hewitt. See id. at 1281–82. The Magluta panel's decision to proceed to Sandin without considering the antecedent question of whether Sandin applies to pretrial detainees is not binding on us. See United States v. Verdugo-Urquidez, 494 U.S. 259, 272, 110 S. Ct. 1056, 1064–65 (1990) (holding that "assum[ptions] . . . [about] the validity of antecedent propositions . . . are not binding in future cases that directly raise the questions").

Every other Circuit that has squarely considered this question has concluded that Bell creates a due process right for pretrial detainees who are subject to punishment. See Surprenant v. Rivas, 424 F.3d 5, 17 (1st Cir. 2005) ("[T]he Sandin Court's rationale applies only to those convicted of crimes—not to pretrial detainees. The courts of appeals that have addressed this question are consentient on the point."); Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1106 & n.12 (10th Cir.

18

2005), vacated in part on other grounds by 449 F.3d 1097 (10th Cir. 2006) (en banc) (per curiam); Benjamin v. Fraser, 264 F.3d 175, 188–89 & n.11 (2d Cir. 2001); Fuentes v. Wagner, 206 F.3d 335, 341–42 & n.9 (3d Cir. 2000); Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999); Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996). Magluta's cursory treatment of Sandin does not prevent us from joining our Sister Circuits. We hold that, consistent with Bell, Mr. Jacoby was entitled to the due process protections enshrined in Wolff before being placed in disciplinary segregation.

## B.

Because we find that Mr. Jacoby had a protected liberty interest, we must continue beyond where the District Court ended. The Baldwin jail provided Mr. Jacoby with a hearing before placing him in disciplinary segregation, so the question before us is whether it was clearly established that the hearing violated Wolff.[6] Where a constitutionally protected liberty interest exists, Wolff holds that a prison must give an inmate: (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418

---

[6] Even if the jail had not given Mr. Jacoby a hearing, Sheriff Mack arguably would have been entitled to qualified immunity. Our caselaw had not, at the time, given fair notice that pretrial detainees are entitled to a due process hearing before being punished for misconduct irrespective of the Sandin analysis.

19

U.S. at 564–66, 94 S. Ct. at 2979.  Wolff also holds that a prison hearing board must be "sufficiently impartial to satisfy the Due Process Clause."  Id. at 571, 94 S. Ct. at 2982.

Sheriff Mack is entitled to qualified immunity with respect to Mr. Jacoby's procedural due process claims.  We start with Mr. Jacoby's claim that the hearing board's refusal to call Sergeant Griffith as a witness violated his due process rights.  Mr. Jacoby suggests that Wolff established that Sheriff Mack had the burden of proving that calling Sergeant Griffith was "unduly hazardous to institutional safety or correctional goals."  However, Wolff explicitly rejected the idea that defendants must state their reasons for not calling a witness:

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.  Although we do not prescribe it, it would be useful for the [hearing board] to state its reason for refusing to call a witness.

Id. at 566, 94 S. Ct. at 2980 (emphasis added).

"Absent specific allegations that the refusal of a disciplinary committee to call witnesses on behalf of the inmate was arbitrary, capricious or an abuse of discretion, the courts are without authority to entertain the issue."  Thomas v.

20

Estelle, 603 F.2d 488, 490 (5th Cir. 1979) (per curiam).[7]  Mr. Jacoby's goal,

presumably, was for Sergeant Griffith to testify that he was aware Mr. Jacoby was

taking Seroquel as part of their jointly conceived plan to identify inmates

smuggling drugs into the Baldwin jail.  But Mr. Jacoby tested positive for cocaine,

not Seroquel.  Even if Sergeant Griffith testified exactly as Mr. Jacoby claims he

would have, it's unclear that testimony would have helped Mr. Jacoby.  Mr. Jacoby

points to no caselaw that would give Sheriff Mack or others at the jail "fair

warning" that failing to call Sergeant Griffith in circumstances like these was a

violation of Mr. Jacoby's due process rights.

Next, we consider Mr. Jacoby's claim that he was denied an impartial

tribunal because Officer Arnold sat on the hearing board.  Mr. Jacoby emphasizes

that "Officer Arnold was directly involved in the underlying investigation that

resulted in Mr. Jacoby being charged with a drug violation: he retrieved Mr.

Jacoby from his cell; he escorted him to the medical ward for a drug test; he

remained present in the medical ward during Mr. Jacoby's drug test; and, he put

Mr. Jacoby in segregation after the positive test results were returned."  As a

threshold issue, Sherriff Mack disputes that Officer Arnold was even involved in

the underlying investigation.  Sherriff Mack notes that Officer Arnold was not

---

[7] Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent on this Court.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

21

listed anywhere on the relevant activity report, did not serve as the arresting officer, and did not make the decision to drug test Mr. Jacoby.

Even accepting Mr. Jacoby's version of events, Officer Arnold's presence on the hearing board was not a clearly established constitutional violation. Mr. Jacoby cites Redding v. Fairman, 717 F.2d 1105 (7th Cir. 1983), in support of his claim. For starters, a Seventh Circuit case cannot clearly establish law in the Eleventh Circuit. See Jenkins, 115 F.3d at 826 n.4. Leaving that issue aside for the moment, Redding actually hurts Mr. Jacoby's argument. In Redding, the Seventh Circuit rejected a per se rule that disciplinary committee members "should not be defendants in pending lawsuits for damages instituted by the very persons over whom the committee sits in judgment." Id. at 1113 (quotation omitted). The Court said that the "disqualification issue should be decided on a case-by-case basis" because "[i]f every named defendant in a prisoners' rights lawsuit must be disqualified from sitting on the [disciplinary board], . . . [it] would vest too much control in a prisoner to determine the [board's] make-up." Id.

It's true that Redding acknowledged that a prison official with "direct personal or otherwise substantial involvement, such as major participation in a . . . decision-making role" in the underlying investigation might be disqualified from a disciplinary board. Id. (quotation omitted). We agree that it would have been facially improper for an officer with a greater decisionmaking role, such as the

22

arresting officer, to serve on the hearing board. However, under Mr. Jacoby's version of the facts, Officer Arnold had no decisionmaking role in his arrest. Officer Arnold merely escorted Mr. Jacoby to the drug test, waited with him during the test, then put him in disciplinary segregation. Mr. Jacoby has failed to demonstrate that Officer Arnold's presence on the hearing board was a clearly established constitutional violation. Because he has not made such a showing as to either of his two procedural complaints, we affirm the District Court's grant of summary judgment in favor of Sheriff Mack on this claim.

\* \* \*

Because Mr. Jacoby is a pretrial detainee, his substantive and procedural due process claims fall within Bell's ambit. We reiterate Bell's holding that "a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." 441 U.S. at 535, 99 S. Ct. at 1872. For this reason, we hold that Mr. Jacoby was entitled to the due process hearing he received before being punished for his misconduct while in jail. However, because Mr. Jacoby has failed to overcome Sheriff Mack's qualified immunity defense on either of his claims, we affirm the District Court's grant of summary judgment.

**AFFIRMED.**

23