[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11322
Non-Argument Calendar
_____

D.C. Docket No. 5:15-cv-00419-TES

TIMOTHY R. JOHNSON,

Plaintiff - Appellee
Cross Appellant,

versus

HOUSTON COUNTY GEORGIA, et al.,

Defendants,

CITY OF WARNER ROBINS, GEORGIA,
DEBORAH D MILLER , Detective,
individually and in her official capacity as an officer of Warner Robins
Police Department ,
MALCOLM H DERRICK, JR, Detective,
"Mac", individually and in his official capacity as an officer of Warner Robins
Police Department,
 H. D. DENNARD , Captain,
individually and in his official capacity as an officer of Warner Robins
Police Department,
R. G. WEST, Lieutenant,
individually and in his official capacity as an officer of Warner Robins

Police Department, et al.,

                                                     Defendants-Appellees,

MARGARET HAYS,

                                                     Defendant - Appellant
                                                     Cross Appellee.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(December 20, 2018)

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

In 2006, the Georgia Supreme Court overturned plaintiff Timothy Johnson's convictions and life sentences for murder and armed robbery, concluding that his guilty plea was not knowing and voluntary. Johnson was re-indicted and transferred to Houston County Jail to await trial. Over seven years later, he was acquitted.

After his release, Johnson brought this counseled federal civil-rights lawsuit alleging malicious prosecution and violations of his substantive and procedural due-process rights. The district court resolved all claims against Johnson save one: a substantive-due-process claim based on his pretrial confinement in administrative segregation after his convictions were overturned in 2006. For that claim, the court denied qualified immunity to defendant Sergeant Margaret Hays, who made

2

permanent Johnson's administrative-segregation classification in January 2011. Hays now appeals the denial of qualified immunity, and Johnson cross-appeals the grant of summary judgment on a procedural-due-process claim also based on his confinement in administrative segregation.

## I.

In September 1984, Taressa Stanley, a convenience-store clerk, was shot during an armed robbery and later died from her injuries. Johnson was charged with the armed robbery and murder, and he pled guilty to those charges in December 1984. In February 2006, the Georgia Supreme Court vacated Johnson's convictions, concluding that his guilty plea was not knowing and voluntary because the record did not show that he had been advised at the plea hearing of certain constitutional rights. *Johnson v. Smith*, 626 S.E.2d 470, 471 (Ga. 2006).

The state decided to retry Johnson, and he was transferred from Georgia State Prison to Houston County Jail (the "Jail") in March 2006 to await trial. The grand jury issued a new indictment in June 2006, but the jury trial, at which Johnson was acquitted, was greatly delayed and did not take place until December 2013, for reasons not known to this panel.

Upon his transfer to the Jail, Johnson was designated a "medium maximum security" detainee and assigned to general population in "H-pod," where he occupied a single-person cell. In May 2009, the Jail changed its pod assignments because

3

particular pods, including H-pod, were reaching capacity. As part of the restructuring, H-pod was reassigned as administrative segregation, which is meant for detainees who cannot get along with others or are required to be by themselves.

Defendant Hays worked at the Jail during the pod restructuring and became chairperson of the Inmate Classification Committee in 2010. She testified that, during the restructuring, detention officers asked the detainees housed in H-pod if they would like to go to general population. According to Hays, Johnson asked to remain in H-pod because he wanted a room by himself. Johnson, however, denies ever being asked to go to the general population or telling Hays or any other detention officer that he wished to remain in H-pod. And the classification records do not reflect that Johnson voluntarily asked to stay in H-pod. Rather, the records simply list his charges—murder, armed robbery, and aggravated battery—as the reasons for his placement.

The Jail periodically conducted inmate-classification reviews. After H-pod's restructuring, Johnson's classification was reviewed three times—on March 12, 2010, June 16, 2010, and January 11, 2011. By the time of the reviews, Hays headed the Classification Committee and therefore determined Johnson's classification. During the January 2011 review, Hays made permanent Johnson's classification in administrative segregation. She listed no reason for the permanent designation. After the permanent designation, Johnson's classification was not reviewed again

4

before trial in December 2013, nearly three years later.  Johnson never filed a complaint regarding his confinement in administrative segregation.

As a detainee in administrative segregation, Johnson did not receive the same privileges as detainees in the general population.  He was confined to a cell where he could communicate with other inmates only through the vent.  He could exit his cell only to shower and occasionally attend 30-minute yard calls.  While on yard calls, he was permitted to be outside in the jail yard, but he could not interact with other inmates.

## II.

Johnson filed this 42 U.S.C. § 1983 federal civil-rights action in November 2015.  He brought claims against various defendants arising out of his 1984 arrest and prosecution, his prosecution following the Georgia Supreme Court's vacatur of his 1984 conviction, and his lengthy pretrial confinement in administrative segregation at the jail.

Two claims against Hays are relevant to this appeal.  First, Johnson brought a substantive-due-process claim, complaining that his confinement in administrative segregation lacked a legitimate governmental purpose.  Second, Johnson brought a procedural-due-process claim, alleging that the jail had confined him to administrative segregation without notice and a meaningful opportunity to challenge the classification.

5

The district court denied summary judgment to Hays on the first claim but granted it on the second claim.  As to the procedural-due-process claim, the court found that it failed for multiple reasons:  Hays did not initially place Johnson in administrative segregation; Johnson never requested a hearing after his initial placement; and no clearly established law would have put Hays on notice that placing Johnson in administrative segregation without a hearing would have denied him due process.

As to the substantive-due-process claim, the district court found that summary judgment was not appropriate because a genuine issue of material fact existed as to whether Johnson was permanently placed in administrative segregation as punishment for the charged crimes.  The court explained that Johnson was a pretrial detainee while awaiting trial, so his claim—despite being presented under the Eighth Amendment—was analyzed under the Due Process Clause of the Fourteenth Amendment, which prohibits pretrial punishment and the imposition of conditions not reasonably related to a legitimate governmental purpose.  The court found a factual dispute regarding Hays's "stated reason for permanently keeping [Johnson] in administrative segregation"—that H-pod was being reassigned and he requested to remain there—because Johnson denied making any such request, and prison records simply listed Johnson's charges as the reason for his confinement in administrative segregation.  Viewing this evidence in Johnson's favor, the district

court reasoned that a reasonable jury could infer that Hays had no legitimate government purpose for keeping Johnson in pretrial administrative segregation and that the more restrictive conditions were, instead, imposed as punishment.

The district court further found that the law was clearly established enough to defeat Hays's defense of qualified immunity. Specifically, the court concluded that the totality of Johnson's confinement conditions—indefinite and lengthy pretrial confinement in the restrictive conditions of administrative segregation for the purpose of punishment—violated Johnson's clearly-established rights.

Hays appeals the denial of qualified immunity on the substantive-due-process claim. She also argues that Johnson's claim is time-barred. Johnson cross-appeals the grant of qualified immunity to Hays on the procedural-due-process claim.

**III.**

We first consider our jurisdiction. We have interlocutory appellate jurisdiction to review an order denying qualified immunity, at least to the extent it turns on an issue of law. *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). Such orders are ordinarily immediately appealable because the "immunity issue is both important and completely separate from the merits of the action, and . . . could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost." *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014).

7

In contrast, we lack "interlocutory jurisdiction to review the *grant* of summary judgment to a defendant on qualified immunity grounds." *Cottrell*, 85 F.3d at 1484 (emphasis in original).  Nevertheless, "[a]n appeal from the denial of qualified immunity may implicate this Court's discretionary pendent appellate jurisdiction to review otherwise non-appealable matters." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016).  We may exercise pendent appellate jurisdiction "if the non-appealable matters are 'inextricably intertwined with an appealable decision or if review of the former decision is necessary to ensure meaningful review of the latter." *Id.* (quotation marks omitted).  "Matters may be sufficiently intertwined where they implicate the same facts and the same law." *Id.* (quotation marks and alteration omitted).  But "[w]e are wary of attempts to 'piggy-back' cross-appeals on an appeal of the denial of qualified immunity." *Leslie v. Hancock Cty. Bd. of Educ.*, 720 F.3d 1338, 1344–45 (11th Cir. 2013).

Here, there is no dispute that we have jurisdiction over Hays's appeal of the denial of qualified immunity because she raises legal issues about whether her conduct violated the Fourteenth Amendment and whether the law was clearly established.  *Cottrell*, 85 F.3d at 1484.  But at this time, we will not review her argument that Johnson's claim is time-barred because the court's non-final limitations decision is not intertwined with or necessary for review of the qualified-immunity issue.  *See Smith*, 834 F.3d at 1292.  Accordingly, we dismiss that portion

8

of Hays's appeal without prejudice to appealing it as part of any appeal from a final judgment.

As for Johnson's cross-appeal, we decline to exercise pendent appellate jurisdiction because Johnson's procedural-due-process claim is not sufficiently interwoven with the qualified-immunity issue to necessitate immediate review. Johnson's substantive- and procedural-due-process claims may share the same basic factual predicate—Johnson's pretrial confinement in administrative segregation— but the legal issues to be resolved are distinct. The court's decision denying qualified immunity turns on the lack of a legitimate government objective for keeping Johnson in administrative segregation. The procedural-due-process claim, in contrast, turns on what procedures, if any, the jail was required to afford Hays with respect to that confinement. There is, of course, some overlapping evidence, but it is not necessary that we review the procedural-due-process claim in order to afford meaningful review of the substantive-due-process claim. Accordingly, we decline to exercise pendent appellate jurisdiction over Johnson's cross-appeal.

In sum, the sole issue before us at this time is whether the district court properly denied qualified immunity to Hays on Johnson's substantive-due-process claim.

**IV.**

We review *de novo* the denial of qualified immunity at summary judgment. *Moore v. Pederson*, 806 F.3d 1036, 1041 (11th Cir. 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing whether summary judgment is warranted, we, like the district court, must consider the record and draw all reasonable inferences in favor of the non-moving party. *Moore*, 806 F.3d at 1041.

Qualified immunity protects public officials from suit in their individual capacities for reasonable, discretionary actions performed in the course of their duties. *Carter v. Butts*, 821 F.3d 1310, 1318 (11th Cir. 2016). But qualified immunity offers no protection if the plaintiff can show that the defendant, even though engaged in a discretionary job duty, violated a constitutional right that was clearly established at the time of the misconduct. *Id.* at 1319. Hays argues that the district court erred in finding both a violation of a constitutional right and that the right was clearly established. We address each issue separately.

## A.

We first consider the district court's conclusion that a reasonable jury could find a violation of Johnson's rights under the Fourteenth Amendment. We analyze the conditions under which a pretrial detainee is held under the Due Process Clause

10

of the Fourteenth Amendment, rather than the Eighth Amendment. *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). "Due process requires that a pretrial detainee not be punished prior to a lawful conviction." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004); *see Block v. Rutherford*, 468 U.S. 576, 583 (1984); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

In evaluating the constitutionality of conditions of pretrial detention, we "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Wolfish*, 441 U.S. at 538; *see Jacoby*, 835 F.3d at 1345 (stating that we must ask whether any "legitimate goal" was served by the prison conditions and whether the conditions are "reasonably related" to that goal). "[T]he government may detain individuals to ensure their presence at trial and may subject them to the conditions and restrictions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Magluta*, 375 F.3d at 1273. But "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Wolfish*, 441 U.S. at 539.

Hays presents two arguments in support of her view that the district court erred in finding a constitutional violation. First, she contends that the court erred in finding that she was required to perform a periodic review of Johnson's

11

administrative-segregation classification. She asserts that no periodic review is necessary when an inmate's administrative confinement is unconnected with the disciplinary process. Second, she maintains that the court erred in finding that Johnson had a liberty interest in freedom from administrative segregation, stating that Johnson cannot meet the standard established by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995).

These arguments, however, fail to address the stated ground for the district court's ruling. In finding a constitutional violation, the court did not cite Hays's failure to perform a "periodic review," which is a procedural protection sometimes afforded to those confined in administrative segregation.[1] *Magluta*, 375 F.3d at 1278 n.7 (stating that inmates may be entitled to "some sort of periodic review" of confinement to administrative segregation). Nor did the court find that Johnson met *Sandin*'s standard, which does not, in any event, apply to pretrial detainees like Johnson. *See Jacoby*, 835 F.3d at 1348–49 ("A pretrial detainee need not meet the *Sandin* standard to establish his right to a due process hearing before being placed in disciplinary segregation.").

Instead, the district court concluded that Johnson had established a substantive-due-process violation under *Wolfish* by showing that the more restrictive

---

[1] True, the district court discussed the lack of periodic review in analyzing whether the right was clearly established, but that is a separate inquiry.

12

conditions of administrative segregation were not reasonably related to a legitimate goal. *See Wolfish*, 441 U.S. at 539 ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment."). That conclusion is not undermined by *Sandin*, *see Jacoby*, 835 F.3d at 1348 ("*Sandin* leaves intact [*Wolfish*]'s holding that a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (quotation marks omitted)), nor does it depend on the procedures the Jail employed in making confinement decisions.

Accordingly, Hays's arguments relating to *Sandin* and periodic review do nothing to convince us that the stated ground for the district court's decision was incorrect. And aside from these two arguments, Hays's initial brief on appeal does not meaningfully challenge the basis for the district court's holding. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (stating that an appellant abandons an issue when she fails "to challenge properly on appeal one of the grounds on which the district court based its judgment"). Her passing references to the "nonpunitive" nature of Johnson's confinement, without offering supporting arguments and relevant authority to explain why the court erred, are insufficient to properly raise the issue on appeal. *Id.* at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a

perfunctory manner without supporting arguments and authority."). While she raises pertinent arguments in her reply brief, these arguments come too late. *See id.* at 682–83 (declining to address arguments raised for the first time in a reply brief). Therefore, accepting the version of events in the light most favorable to the plaintiff, we affirm the district court's conclusion that Johnson established a constitutional violation.

**B.**

We next consider Hays's argument that the district court "erred in finding that the law was clearly established that an officer is required to perform periodic reviews of the designation of a pre-trial detainee who is in administrative segregation due to overcrowding." She contends that the law was not clearly established in 2011 that "an inmate should not be placed in administrative segregation due to overcrowding and reassignment of a cell," or that periodic reviews were necessary when a defendant could have, but did not, request reassignment.

Again, however, Hays's argument glosses over the district court's determination that Johnson established a genuine issue of material fact as to whether his pretrial confinement in administrative segregation was for punitive reasons. While Hays asserts that Johnson's confinement was due to "overcrowding," that reason explains only the initial restructuring of H-pod, not Johnson's subsequent placement in the newly-restructured H-pod, let alone the decision to keep him in

14

administrative segregation on a permanent basis more than a year later. Plus, as the district court noted, the stated reason for the initial placement decision was that Johnson requested it, but he denied ever doing so.

Moreover, we conclude that it was clearly established that subjecting a pretrial detainee to more restrictive conditions of confinement solely for the purpose of punishment violated clearly established law. In *McMillian v. Johnson*, for example, we held that "it was clearly established that transferring a pretrial detainee to death row for the purpose of punishment violates due process." 88 F.3d 1554, 1565–66 (11th Cir. 1996). In finding that the law was clearly established, we did not focus on the particular conditions of death-row confinement. *See id.* Rather, we explained that *Wolfish* prohibited "*any* pretrial punishment, defined to include conditions imposed with an intent to punish." *Id.* at 1565 (emphasis in original). That is because "intent or motivation is an essential element of the underlying constitutional violation." *Id.* at 1566. Because we found that a reasonable jury could infer an "intent to punish" on the part of the defendants in *McMillian*, we said that "there [was] no question that their alleged conduct violated clearly established law." *Id.*

For the reasons explained earlier—namely, that Hays forfeited this issue on appeal—we do not revisit the district court's determination that a reasonable jury could infer that Hays intended to punish Johnson by keeping him in the more restrictive conditions of administrative segregation. And we conclude that if a jury

15

found such an intent to punish, there is likewise "no question" that Hays violated clearly established law.

## V.

In summary, we affirm the denial of qualified immunity to Hays on Johnson's substantive due process claim.  We dismiss her appeal of the denial of her statute-of-limitations defense, and we dismiss Johnson's cross-appeal.

**AFFIRMED IN PART; DISMISSED IN PART.**