[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14867
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-00434-WFJ-SPF

MAT BAYSA,

Plaintiff-Appellant,

versus

ROBERT GUALTIERI,
in his official capacity as Sheriff of the Pinellas County Sheriff's Office,
CHARLES REDINGER,
individually, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 17, 2019)

Before WILSON, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Mat Baysa ("Baysa") appeals from the district court's grant of summary judgment in favor of Robert Gualtieri ("the Sheriff"), Charles Redinger ("Redinger"), and Stephanie Archer ("Archer," and, with Redinger, "the Deputies") in this § 1983 action. Baysa alleges that the Deputies violated his Fourth Amendment rights during his arrest. And he alleges that these violations were due to policies and practices of their employer, Robert Gualtieri in his official capacity as sheriff of the Pinellas County Sheriff's Office. For the reasons given below, we affirm in part, vacate in part, and remand.

## I.

We assume the parties are familiar with the facts of this case and summarize them only insofar as necessary to explain our decision. The facts below are described in the light most favorable to the plaintiff.

Early morning on June 10, 2013, Baysa was playing cards at Derby Lane Poker Room in St. Petersburg, Florida. He claims that a security guard at Derby Lane was closely watching him. He testified that he exited the card room and walked into the parking lot, before returning and accusing the security guard of staring at him all night.

The security guard escorted Baysa outside. He reentered, and the security guard again ordered him to leave. Baysa and the security guard argued with one

2

another, as Baysa admits. Derby Lane staff called police to issue a trespass warning. Baysa admits that he was "told . . . to stay away [and] go outside."

Once in the parking lot, Baysa saw movement by his car, and feared he was being set up for a DUI. He called 911. On the call, audio of which is in the record, Baysa was noticeably agitated and argumentative. He stated that he felt in danger from the security guard and requested to be picked up and taken home. He told the dispatcher that a guard requested that he go home and stay away.

The Deputies responded to Baysa's 911 call. Deputy Redinger spoke with the security guard, who stated that Baysa was "acting in a disorderly fashion" and that Derby Lane wanted to issue a trespass warning. The security guard repeated his trespass warning to Baysa in Deputy Redinger's presence. Baysa testified that Deputy Redinger restated the guard's trespass warning, but that Baysa argued against it.

Deputy Redinger then walked over and told him they were going to issue a trespass warning. Deputy Redinger ended the conversation by saying "Don't come back here anymore. You're free to go." According to Baysa's testimony at his criminal trial, Baysa began to walk away from Deputy Redinger. But after he had taken three or four steps, he was grabbed from behind and fell headfirst into the pavement. He testified that his neck became twisted and he next remembered being in Deputy Redinger's car with his hands in handcuffs.

3

During his deposition in this matter, Baysa further testified that while on the ground, he was punched and kicked all over his body before he lost consciousness, and that he had been put in a chokehold or headlock.

Deputy Redinger testified that Baysa was "verbally . . . aggressive" with Derby Lane personnel. He further stated that Baysa walked towards the security guard "in an aggressive stance, shoulders back, chest out, bowing his chest up and you can see clenched fists." Deputy Redinger "felt there was an immediate issue where [Baysa] might strike" the guard and stepped in to arrest Baysa.

Deputy Redinger further testified that he grabbed Baysa's wrists to restrain him, at which point Baysa pulled away. Deputy Redinger then pushed Baysa against the patrol car, but Baysa broke free again. Deputy Redinger effected a takedown by grabbing around Baysa's shoulders or neck.

Deputy Redinger and Baysa fell onto the pavement. Deputy Redinger testified that he used "palm heel strikes," or open hands where the "striking area is the heel of your palm[,] . . . somewhere from [Baysa's] shoulder to waistline." Deputy Redinger used these to pull Baysa's hands free and handcuff him.

Baysa was arrested on misdemeanor counts of disorderly conduct in an establishment and resisting arrest without violence; the State's Attorney's Office amended the former charge to trespass. Baysa was acquitted of both counts.

4

Baysa then filed a complaint in this matter, alleging multiple constitutional violations under 42 U.S.C. § 1983.  The defendants moved for summary judgment, which the district court granted.  Baysa now appeals.

## II.

We review a district court's decision to grant a motion for summary judgment de novo and construe the facts in the light most favorable to the non-moving party.  Jacoby v. Baldwin Cnty., 835 F.3d 1338, 1342 (11th Cir. 2016).  A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.

Baysa argues that the Deputies lacked probable cause to arrest him and therefore violated his Fourth Amendment rights.  He also argues that the nature of that arrest was overly violent, and therefore that the Deputies did not act reasonably during the arrest and violated his Fourth Amendment rights.  In addition, Baysa claims that the Sheriff oversaw a policy or custom of chokeholds or headlocks among law enforcement in his municipality that caused his injuries.[1]

---

[1] Baysa also brought state law claims of false arrest and imprisonment, battery, and assault against all three defendants and malicious prosecution against the Deputies. The district court concluded that the existence of probable cause with respect to Baysa's § 1983 false arrest claim barred the state law malicious prosecution and false arrest and imprisonment claims. And it determined that the assault and battery claims could not succeed because the Deputies' conduct

Baysa's § 1983 claims require that he prove that the defendants' conduct violated a constitutional right and that the challenged conduct was committed under color of state law. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016). Defendants invoke qualified immunity. To overcome that immunity, Baysa must show that (1) taken in the light most favorable to Baysa, the facts show that the defendants' conduct violated a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

The district court concluded that the Deputies had probable cause to arrest Baysa. And it found that the Deputies used a reasonable amount of force during the arrest. Because it found that no constitutional violation occurred, the district court also granted summary judgment to the Sheriff on Baysa's "policy or custom" claim against him. We address each conclusion in turn.

---

was not clearly excessive or unlawful, as required under Florida law. Baysa only mentions state law claims on the first page of his initial brief and his summary of the argument. This is not enough to raise the issue on appeal, and the state law claims are accordingly abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). Baysa notes that the district court relied on the same facts in rejecting Baysa's § 1983 claims and his state law claims. This is irrelevant. The district court's styling of its order, and the identity of facts relevant to the claims, does not relieve a party on appeal of its obligation to devote discrete sections of its brief to its claims. See id. at 681-82 ("Abandonment of a claim or issue can also occur when the passing references to it are made in the 'statement of the case' or 'summary of the argument,' . . . [or] when passing references appear in the argument section of an opening brief, particularly when the references are mere 'background' to the appellant's main arguments or when they are 'buried' within those arguments.").

A. <u>False Arrest Claim</u>

Baysa first claims that his warrantless arrest lacked probable cause and therefore violated the Fourth Amendment.  "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996).  Probable cause is an "absolute bar" to a § 1983 false arrest claim.  <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998).  Probable cause to arrest exists when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." <u>United States v. Gonzales</u>, 969 F.2d 999, 1002 (11th Cir. 1992).  This does not require an actual showing of criminal activity, but "only a probability or substantial chance of criminal activity."  <u>Illinois v. Gates</u>, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 (1983).  And it "does not require overwhelmingly convincing evidence, but only reasonably trustworthy information."  <u>Ortega</u>, 85 F.3d at 1525 (internal citations and quotations omitted).

An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153, 125 S. Ct. 588, 594 (2004).  It is enough that probable cause exists to arrest for any crime.  <u>Id.</u>  Therefore, while the Deputies arrested Baysa for disorderly conduct in an establishment and resisting arrest

7

without violence, probable cause for an arrest for trespass would be enough to bar Baysa's § 1983 false arrest claim. The district court did not err in determining that such probable cause existed.

Florida law defines a trespasser as someone "who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance [a]s to which notice against entering or remaining is given . . . by actual communication." Fla. Stat. § 810.09(1)(a). This notice must be actually and personally communicated to the offender by the property's owner or an "authorized person." Fla. Stat. § 810.09(2)(b); see Smith v. State, 778 So.2d 329, 331 (Fla. 2d DCA 2000). Thus, the Deputies had probable cause if they had knowledge of facts and circumstances that could give rise to a reasonable belief that Derby Lane's owner or an authorized person had communicated notice to Baysa not to remain on the premises, and that he had nonetheless remained.

There is ample evidence in the record to support a finding that the Deputies had probable cause to arrest Baysa for trespass. Derby Lane's security guard told Baysa to leave several times, which Baysa stated in his 911 call and admitted in his deposition. The Deputies spoke with Derby Lane's security guard, who stated that Derby Lane wanted to issue a trespass warning. This warning was repeated to Baysa in the Deputies' presence. Baysa admitted in his deposition that he remained to try "to make [his] point" and "to make an argument."

8

Bearing in mind that probable cause is a "common sense" inquiry, Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (internal citations and quotations omitted), we conclude that the above circumstances are sufficient to support the district court's conclusion that the Deputies had probable cause to arrest Baysa for trespass.  The Deputies were "entitled to rely on allegations of an informant and corroborating evidence," and thus could obtain probable cause from Derby Lane's security guard's statements.  See Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009); see also Rankin, 133 F.3d at 1441 (holding that an officer can rely on a victim's criminal complaint as support for probable cause).  The Deputies also observed Baysa's actions, including his remaining on the premises after interacting with the security guard.  These circumstances are enough to find probable cause to arrest for trespass.  We therefore affirm the district court on Baysa's § 1983 false arrest claim.

B. Excessive Force Claim

Baysa next argues that the Deputies used excessive force during his arrest, thereby violating the Fourth Amendment.  To determine whether officers "behaved reasonably in the light of the circumstances before [them]," courts must evaluate whether the force used was "reasonably proportionate to the need for that force" by analyzing "the severity of the crime, the danger to the officer, and the risk of

9

flight." Galvez v. Bruce, 552 F.3d 1238, 1243 (11th Cir. 2008) (internal citations and quotations omitted).

The district court, after sifting through the factual record, concluded that the Deputies acted reasonably when arresting Baysa. We conclude, however, that the district court erred in discounting portions of Baysa's testimony and therefore failed to apply the correct summary judgment standard.

The district court relied upon Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc. in disregarding certain disparities between Baysa's testimony at his criminal trial and his testimony from his deposition in this action. See 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). The district court cited discrepancies regarding "whether or to what extent—and when—he lost consciousness, whether he was choked, whether he jerked his arm in response to Deputy Redinger grabbing him or was simply taken to the ground, his reasons for not walking to his car, whether he stayed on the scene after the warning to explain himself to Deputy Redinger, and, based on the 911 call, whether he was told to leave." Of particular relevance, the district court disregarded Baysa's allegations

10

that he had been choked by Deputy Redinger, and whether he had been punched by Deputy Redinger while on the ground.

In the particular circumstances of this case, we conclude, however, that it was improper to rely on discrepancies to disregard a party's sworn testimony when that party's prior testimony occurred in a different case. See Reese v. Herbert, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008) ("[W]e would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding."). Our Court appears to have applied the Van T. Junkins rule only when an affidavit or declaration contradicts sworn deposition testimony. See, e.g., Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1316-17 (11th Cir. 2007); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987); Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986); Van T. Junkins, 736 F.2d at 656-57. We have seen no instance in which a litigant's testimony from another judicial proceeding was contradicted by later deposition testimony and the later was subsequently disregarded, and the Deputies cite to none.

In his criminal trial, Baysa was not trying to impose liability on the Deputies but was instead trying to avoid being found guilty. He therefore did not have every incentive to flesh out the narrative of his arrest with details that might be useful in a civil trial against the Deputies. He testified that he was not "real clear what

11

happened after [he] felt his neck getting twisted."  In addition, at his deposition Baysa testified that he was not "real clear" what happened after his neck was twisted because he was "down and . . . already grasping for air."  Baysa's medical records also state that he told hospital personnel that he was punched.  Baysa's consistent reference to his lack of clarity, and the contemporaneous record of Baysa telling hospital personnel that he had been punched, leads us to conclude that the inconsistencies between Baysa's trial testimony and his deposition testimony are "more appropriately considered 'variations of testimony' or 'instances of failed memory' going to the weight and credibility of the evidence, as opposed to falsehoods rendering the [deposition testimony] a disregardable 'sham.'"  Croom v. Balkwill, 645 F.3d 1240, 1253 n.18 (11th Cir. 2011).

Of course, Baysa's deposition testimony, once fully considered, may not be enough to avoid summary judgment in the defendants' favor.  Even if it is, it "may not credibly withstand cross-examination," but "weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility.  Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).

12

We therefore vacate the district court's ruling granting summary judgment to the Deputies on Baysa's § 1983 excessive force argument and remand for reconsideration of Baysa's deposition testimony through the proper lens.[2]

C. Claim Against Sheriff's Office

Finally, Baysa brings a § 1983 claim against the Sheriff under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978). Baysa's claim is against the Sheriff in his official capacity, which is functionally a suit against the municipality's Sheriff's Office as a whole. See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005). To succeed in a § 1983 claim against a municipality, Baysa must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

The district court concluded that because Baysa could not show that his constitutional rights were violated, his Monell claim must fail. Because we vacate the district court's conclusion that Baysa's constitutional rights were not violated,

---

[2] We express no opinion on whether, after properly crediting Baysa's deposition testimony, he can still demonstrate genuine issues of material fact necessary to survive the defendants' summary judgment motion. We also express no opinion on whether, if the defendants did violate one of Baysa's constitutional rights, that right was clearly established at the time of the misconduct. We leave it to the district court to determine these issues in the first instance.

13

we vacate the grant of summary judgment to the extent it rested on that conclusion. We leave remaining arguments on the issue for the district court to consider in the first instance.

IV.

For the foregoing reasons, we affirm the district court's order to the extent it granted summary judgment to the defendants on Baysa's false arrest claim, vacate it to the extent it granted summary judgment to the defendants on Baysa's excessive force claim and Monell claim, and remand for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**